JANE LINTON MORRIS as Administratrix, etc., Respondent, *v.*
WALSTON H. BROWN et al., Appellants.

Defendants were engaged, under a contract with the aqueduct commissioners
of the city of New York, in excavating for a tunnel.   By their contract
they were bound to furnish " all facilities for the purpose of inspection."
M., defendant's intestate, was a civil engineer in the employ of the com-
missioners.   It was his duty to inspect the work to see that it was done
in compliance with the contract.    For the purpose of removing the
material excavated defendants employed " dump cars " running on a
track laid in the shaft.   The cars were drawn out by a cable and returned
by gravitation, their downward speed being regulated by a brake.   They
were not intended as facilities for taking persons down the shaft, or
fitted for that purpose.    M., who was riding on the outside of one
of these cars down the shaft, to where the work of excavation was
going on, through the neglect of the brakeman in charge of the car
to control its velocity, was thrown from the car and killed.    In an
action to recover damages, it appeared that there was plenty of room in
the shaft to go on foot up and down it, and there was no obstruction in the
way of the engineer's proceeding to the work on foot; that while M. had
been accustomed, with the consent of the brakeman, to so ride down, it did
not appear that this was with the knowledge of the defendants, or that
the brakeman had any authority to give his consent.   It also appeared

that other engineers employed in the work of inspection usually, although not always, walked up and down the shaft. *Held,* that no duty or obligation rested upon defendants to transport M. into the tunnel or to allow such a use of their car by him, or to manage it with such care as to prevent injury to him when riding thereon; that no license could be implied by such former use of the cars; that the decedent took upon himself the risk, both as to the condition of the cars and the quality and care of the brakeman; and that, therefore, a refusal to nonsuit was error.

*It seems* that if the decedent in going in or coming out of the tunnel, or while engaged in the duty of inspection had been run over by the car, either because of its imperfection or the careless management of defendants' servant having it in charge, a different question would have been presented.

*Byrne* v. *N. Y. C. & H. R. R. R. Co.* (104 N. Y. 362); *Weinhold* v. *Acker* (17 J. & S. 182); *Wendell* v. *Baxter* (12 Gray, 494); *Ackert* v. *Lansing* (59 N. Y. 646); *Beck* v. *Carter* (68 id. 283) distinguished.

A master is chargeable with the conduct of his servant only when the latter is acting in the execution of the authority given him and in the performance of his duties.

(Argued October 15, 1888; decided November 27, 1888.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made December 14, 1886, which affirmed a judgment in favor of plaintiff, entered upon a verdict, and affirmed an order denying a motion for a new trial.

This action was brought by plaintiff as administratrix of the estate of Robert E. Morris, to recover damages for alleged negligence, causing the death of her intestate.

The material facts are stated in the opinion.

*Edward T. Lovett* for appellants. The plaintiff's intestate assumed the risk of riding on these cars, as they were not constructed for or intended by defendants to be used as passenger cars. (*Deforest* v. *Jewett,* 88 N. Y. 269; *Gibson* v. *E. R. Co.,* 63 id. 449; *Laning* v. *N. Y. C. R. R. Co.,* 49 id. 521.) The greatest negligence on the part of the defendants will not cure the defect of the least negligence contributing to the injury on the plaintiff's part. (*Field* v. *H. R. R. R. Co.,* 24 N. Y. 430; *Cordell* v. *N. Y. C. & H. R. R. R. Co.,* 75

id. 332; *Reynolds* v. *N. Y. C. & H. R. R. R. Co.*, 58 id. 248; *Becht* v. *Corbin*, 99 id. 658; *Hart* v. *Hudson River Bridge Co.*, 84 id. 57; *Gregor* v. *N. Y. C. R. R. Co.*, 40 id. 34; *Sammon* v. *N. Y. & H. R. R. Co.*, 62 id. 250; *Clark* v. *Eighth Ave. R. R. Co.*, 36 id. 136; *Searles* v. *M. R. Co.*, 101, id. 662; *Burrows* v. *Erie R. Co.*, 63 id. 556; *Morrison* v. *E. R. Co.* 56 id. 302; *Phillips* v. *R. & S. R. R. Co.*, 49 id. 177; *Kreasanowski* v. *N. P. R. R. Co.*, 18 Fed. R. 229; *R. R. Co.* v. *Jones*, 95 U. S. 439.) It is no excuse for the deceased to say that he was on this car with the consent of the defendants. (*Burrows* v. *E. R. Co.*, 63 N. Y. 556.) It is not sufficient that the plaintiff should prove facts from which either the conclusions of negligence or the absence of negligence may with equal fairness be drawn, but the burden is upon the plaintiff to prove that there was no contributory negligence on his part. (*Hart* v. *Hudson River Bridge Co.*, 84 N. Y. 56; *Tolman* v. *S. B. & N. Y. R. R. Co.*, 98 id. 198; *Lee* v. *Troy Citizens' Gas Light Co.*, Id. 116; *Bernstein* v. *Rose*, 10 Daly, 338.) There is no presumption that the plaintiff is free from negligence; some evidence of the exercise of due care is required. (*Wilds* v. *H. R. R. R. Co.*, 24 N. Y. 430; *Warner* v. *N. Y. C. & H. R. R. R. Co.*, 44 id. 471; *Reynolds* v. *N. Y. C. & H. R. R. R. Co.*, 58 id. 250; *Hale* v. *Smith*, 78 id. 483; *Desmond* v. *Rose*, 40 J. & S. 569; *Cordell* v. *N. Y. C. & H. R. R. R. Co.*, 75 N. Y. 330; *Hart* v. *Hudson River Bridge Co.*, 84 id. 56; *Riceman* v. *Havemeyer*, 85 id. 647; *Becht* v. *Corbin*, 82 id. 658.)

*C. A. Kellogg* for respondent. The defendants were negligent in allowing the cars to descend into the tunnel without attaching the cable or attempting to control their speed in anywise, while human beings were upon them whose lives would be endangered. (*Radley* v. *L. & N. W. R. R. Co.*, L. R., 1 App. Cas. 754, 759; *Kenyon* v. *N. Y. C. R. R. Co.*, 5 Hun, 479; *Green* v. *E. R. Co.*, 11 id. 333, 334.) The evidence to warrant a nonsuit on the ground of defendants' negligence must appear so clear that no construction of the evidence or inference drawn

from the facts will warrant a contrary conclusion. (*Stackus* v. *N. Y. C. R. R. Co.*, 79 N. Y. 465.) When the evidence is undisputed, where the facts are such that different conclusions might be drawn by different minds from them, the court cannot say, as matter of law, that the party has or has not been guilty of contributory negligence, but must submit the question to the jury. (*Hart* v. *Hudson R. Bridge Co.*, 80 N. Y. 622.) Plaintiff's intestate was rightfully on the premises under the contract, the car being one of the facilities for entering the tunnel, and, under an implied license from the former use of the cars, that he might righfully ride upon them. (*Byrne* v. *N. Y. C. R. R. Co.*, 104 N. Y. 365; *Sutton* v. *N. Y. C. R. R. Co.*, 1 Duer, 580; *Coughtry* v. *Globe Woolen Co.*, 56 N. Y. 124; *Swords* v. *Edgar*, 59 id. 28; *Ackert* v. *Lansing*, Id. 646; *Beck* v. *Carter*, 68 id. 292; *Congdon* v. *Delaware & Hudson Canal Co.*, 15 Week. Dig. 24; *Weinhold* v. *Acker*, 49 J. & S. 182.; 99 N. Y. 671.) As plaintiff's intestate was aware that it was the duty of the man in charge of the cars, to attach the cable before starting the cars, and his invariable custom to do so, he had a right to rely upon the fact that this duty would be performed. (*Newson* v. *N. Y. C. R. R. Co.*, 29 N. Y. 383; *Roll* v. *N. Y. C. R. R. Co.*, 7 Week. Dig. 497; *Gray* v. *Grand Trunk R. R. Co.*, 8 id. 371; *Sutton* v. *N. Y. C. R. R. Co.*, 66 N. Y. 243–248.) As the collision was produced solely by the gross neglect of defendants' agent, the position of plaintiff's intestate on the car did not contribute to it in the remotest degree. (*Carroll* v. *N. Y. & N. H. R. R. Co.*, 1 Duer, 578.) There may be a recovery even where the plaintiff was negligent, if such negligence was not the proximate cause of the injury. (Sherman and Redf. on Neg. §§ 25, 28 and note; *Button* v. *H. R. R. R. Co.*, 18 N. Y. 248, 258; *Haley* v. *Earle*, 30 id. 209; *Austin* v. *N. Y. Steamboat Co.*, 43 id. 75; *Kenyon* v. *N. Y. C. R. R. Co.*, 5 Hun, 479; *Green* v. *E. R. Co.*, 11 id. 333, 334; *Reemer* v. *L. I. R. R. Co.*, 36 id. 254; *Stringham* v. *Stewart*, 100 id. 516; *Hawley* v. *N. C. R. R.*

*Co.*, 82 id. 370.) Evidence in reference to the habit of riding into the tunnel on the cars was proper to show a license on the part of the defendants to allow the engineers to ride upon the cars. (*Congdon* v. *D. & H. C. Co.*, 15 Week. Dig. 24; *Weinhold* v. *Acker*, 49 J. & S. 182; 99 N. Y. 671.)

DANFORTH, J. The defendants, under a contract with the aqueduct commissioners of the city of New York, were engaged at Croton Dam in the construction of a tunnel by excavation. The decedent was a civil engineer in the employ of the commissioners, and it was his duty to inspect for them the work of the defendants, "to see that it was done in compliance with their contract," and the defendants bound themselves to furnish "all facilities for the purpose of inspection." The shaft had been opened about three hundred and fifty feet on a descending grade, and the defendants had a track laid therein, over which, by the aid of a stationary engine and a cable attached thereto, and to open boxes or dump cars, they drew out stone and other material broken off by blasting. The cars returned by gravitation at a speed intended to be regulated in part by a brake applied to a drum over which the cable ran. On the 24th of September, 1885, the decedent got upon the outside of one of these cars, and before reaching the end of the excavation, was, through the omission of defendant's servant to attach the cable to the car, or otherwise control its velocity, thrown off and killed. At the close of the case defendant's counsel asked for a dismissal of the complaint, upon the ground, among others, that the plaintiff had failed to show any duty or obligation on the part of the defendants to so manage the cars that they should be in safe condition and run with care to prevent injury to the intestate. The request was refused and the case submitted to the jury by the learned trial judge, as one where for negligence on the part of the defendant, and freedom from negligence on the part of the intestate, the plaintiff might recover. The plaintiff had a verdict. The important question upon this appeal is raised by the exception taken to the refusal of the trial judge to dismiss the complaint.

At the request of the defendants the trial court charged the jury that " it is a matter of uncontradicted evidence that these cars were placed in this tunnel for the purpose of hauling out the debris, and not for the purpose of transporting passengers," and, also, " in the absence of a duty on the part of the defendants to transport the deceased in and out of the tunnel, he was a trespasser on the car." As thus presented, the question of contributory negligence becomes unimportant, but if it were otherwise, and that question fairly in the case, I should have no hesitation in saying that, under the evidence as to the circumstances and the conduct of the intestate, it was one proper for the consideration of the jury, and their conclusion upon it beyond the reach of this court. On the other hand there is no suggestion of an intentional wrong practiced on the plaintiff, and the only question is, whether there was any duty on the part of the defendants to transport him into the tunnel, for it was while going in that he received injury. Of course, the learned judge did not use the term " passenger " as including only those who, for a consideration or otherwise, might acquire the right to be in or on the cars, but to emphasize by contrasting it with the term indicating material substances or matter which necessity or convenience required to be taken from the tunnel. We may start, then, with the proposition that the cars were not intended by the owners for the transportation of human beings.

But the contention of the plaintiff is (1), that the car was one of the facilities for entering the tunnel, and under the contract, the plaintiff entitled to its use; (2) that from the former use of the car there was an implied license that he might ride upon it, and, therefore, he was rightfully there. I am unable to find any foundation for the proposition.

It would not, I suppose, be claimed that, by this contract, the defendants were under any obligation to carry or furnish the intestate the means of carriage for himself from the place where his office or that of the commissioners might be, to the tunnel, whether that office was near to or remote from it.

Nor would the defendants be liable if, while they were

running wagons for the transportation of tools or implements from their warehouse, the intestate had, by the acquiescence of the driver, often gone along, until finally, on the way to the tunnel, he received an injury by the overturning of the vehicle, through the negligence or carelessness of the driver. Nor would they be liable if the defendants themselves, going to the tunnel in a carriage driven by their servant, the intestate had got up behind, and the servant, knowing it, had driven carelessly and injured him. If, in either case, or in the case in hand, the mischief had resulted from the personal act of the defendants, done with knowledge of the intestate's presence, they would have been liable, and in either case the servant might be, but I can find no reason or principle upon which the defendants could be charged, in the absence of some personal act, or some authority by them for the act of the servant. Clearly the inspector must find his way as best he could, and at his own risk, to the mouth of the tunnel. His duty of inspection began there. It was to continue until the tunnel was finished. At what point then, if at all, did the obligation of carriage fall upon the defendants? I cannot discover it, nor can I see how the conveyance of the engineer has any relation whatever to the defendants' duty to furnish facilities for inspection. If the shaft had been a rising one, or if the roof of the tunnel was so high that its condition could not be examined from below, it might be the duty of defendants to prepare a scaffold, or furnish a ladder, or other means of access, for without one or the other, or some artificial means, the inspector could not approach the place to be inspected. But however that might be, the defendants could not be called on to carry him up the ladder or along the platform. The contract does not call for that accommodation.

So in the case before us it is plain, upon the testimony, that there was no obstruction in the way of the engineer's entrance into the tunnel, and that no facility was lacking to enable him to complete the work of inspection from the beginning to the end of the tunnel, as then constructed. At

the mouth, or opening, the entrance was obvious, and step by step the inspection could have been made, precisely as well and as thoroughly as if the inspector had gone in on a railroad.

There was no impediment. The duty of inspection seems to have been confided to the engineers Ridgway, Larned, Gallery and the decedent. From the testimony of the survivors it appears that the gauge of the track was three feet and a half, the theoretical width of the tunnel twelve feet, and its actual width not uniform. The distance between the track and the sides of the tunnel also varies; on the right hand side it is from four to four and a half feet and six feet. The space on the left hand side is mainly occupied by the air shaft. The track was single, cars going at intervals as occasion required, but only in one direction at any one time  The track and the space outside of the track was, therefore, available for the inspectors. Moreover, they did in fact usually and habitually, although not always avail themselves of that space and travel in and out on foot. It was comparatively seldom that either rode upon a car. Ridgway says, "we could walk down through the roadway. I walked most of the time myself, and was accustomed to see the men walking out of the tunnel and walking in. One could walk on the track or by the side. It is only a question of ease. I can go from one end of the incline to another on foot and do my work, and I do do it, and have been doing it since I went on the work — January, 1885." Larned walked backward and forward to his work; in doing so used the track. Webster, a civil engineer employed by defendants, and of twenty-four years experience in such work, says: "I have never ridden on these cars. I have gone in and out always on foot." Gowen, also a civil engineer employed on the work by the commission, and called by the plaintiff, said: "I did not regard those cars as facilities or means for taking people down or bringing them up. I regard them particularly for bringing out debris and rocks from the heading." There was nothing in the appearance of the cars to serve as an invitation to man. They were unprovided with seats, were wet from the drip of water and

dirty from the loads they carried.   As they were not furnished for such use, so there was no permission from the defendants or any one of them that they might be so used.   But it is said this permission might be implied, because the intestate and others had before ridden upon the cars.   Without permission from or duty on the part of the defendants to give it, I cannot see how that result follows.   On the contrary, a person so using the car at each time took upon himself the risk, and must abide by its condition and the quality of the attendant at the time he so used it, and was entitled only not to be led into danger.

Negligence is an omission of care and caution in what we do.   But the duty to be actively cautious and vigilant is relative, and where that duty has no existence between particular parties, there can be no such thing as negligence in the legal sense of the term.   The plaintiff was in no position to complain of the defendants or their servants.   The frame and dump the intestate got upon was not a vehicle for his carriage, but an instrument of labor, a mere implement furnished by the defendants to their servants, as they might have provided a man with a basket or barrow, or a mule with panniers to take out the refuse, as in former times was the custom in doing such work.   It might have been a scraper or dirt-shovel, or stone-boat or dump-cart drawn by horses.   In either case would the owner be liable to one who seeking to use the machine for convenience in personal transportation, received an injury ?   Certainly not.   Nor can he make out a better case, because by the combination of a rail, wheels and stationary power, the same work is done, but more easily.

The benefit of the contract between the defendants and the aqueduct commissioners no doubt extended to the plaintiff's intestate and the other agents of the commissioners, but if I am right in its construction, no liability arose from that contract to furnish the track or car, or other means of entering the tunnel, or do more than not to obstruct the entrance of the commissioners or their agents, and I find nothing else to show how any liability or duty to the plaintiff could arise.

However imperfect the track or the car, or however negligent or careless its manager may have been, they were not singly or in combination dangerous, nor would the plaintiff's intestate have been harmed if he had kept away from them. If in going out of or entering the tunnel, or while engaged in the duty of inspection, he had been run over by the car, either from the careless management of the servant of the defendant having it in charge, or from its leaving the track by reason of the imperfection either of the track or the car, a different question would have been presented, one which might well be answered in his favor upon the principles applied in the cases now cited in his behalf, viz.: *Byrne* v. *N. Y. C. & H. R. R. R. Co.* (104 N. Y. 362); *Weinhold* v. *Acker* (49 N. Y. Super. Ct. Rep. 182); *Ackert* v. *Lansing* (59 N. Y. 646); and, also, *Wendell* v. *Baxter* (12 Gray, 494).

The actual case is different. The plaintiff had a right to be in the tunnel for its inspection. The contract put the defendants under no obligation to carry him into the tunnel, nor by it did he acquire any right to be upon the car. Nor did he acquire that right through any consent or act or acquiescence on the part of the defendants. All the witnesses agree that no permission was given by the defendants; no evidence tends to show that they even knew the car was at any time so used. The brakeman of the car had known it, but neither his knowledge nor assent could bind the defendants. He was not their agent for that purpose. It is a general proposition that a master is chargeable with the conduct of his servant, only when he acts in the execution of the authority given him. Here the servant had only to go up with loads of stone or dirt and return with the empty cars, the easiest and simplest of duties, with little responsibility, and engaged in an employment requiring only a low degree of intelligence, his discretion at any rate limited to the care and proper disposition of the loads intrusted to him; his position inferior to that of the driver of the wagon or carriage in the cases I have supposed. There is nothing whatever in the record to show that in not resisting the intestate's entrance

upon the car, or in consenting to it he was acting in pursuance of any authority conferred on him. He had nothing to do and could, in the nature of things, have nothing to do with human freight.

The law, for reasons of convenience, makes à master liable for the act of his servant, even though the servant, in the performance of his duty, is guilty of a deviation, or a failure to perform it in the safest or best manner, "but where the servant, instead of doing that which he is employed to do, does something which he is not employed to do at all, the master cannot be said to do it by his servant, and, therefore, is not responsible for the negligence of his servant in doing it" (*Mitchell* v. *Crassweller*, 13 C. B. 247); or, as it is elsewhere stated, "where the master has neither ordered the thing to be done, nor allowed the servant any discretion as to the mode of doing it, I cannot see how, in common justice or common sense, the master can be held responsible." (*M'Kenzie* v. *M'Leod*, 10 Bing. 385.) In the case before us the brakeman was never told, or authorized to carry any person, and if he acquiesced in, or by silence consented to the intestate's going in upon the cars, there is no evidence that in doing so he was acting in the line of his duty, or within the scope of his employment. The deceased had, in fact, ridden upon the car; he had done so under no other permission, a volunteer, but in safety. In each instance, however, he must be deemed to have assumed the risk, and this last time he was unfortunate. The consequences of that misfortune should not be thrown upon the defendants.

In *Beck* v. *Carter* (68 N. Y. 283), the general proposition is maintained that "where the owner of land expressly, or by implication, invites others to come upon his land, if he permits anything in the nature of a snare to exist thereon, which results in injury to one availing himself of the invitation, and who at the time is exercising ordinary care, such owner is answerable for the consequences." It is also said, however, "if he gives but a bare permission to cross the premises, the licensee takes the risk of accidents in using the premises in the

condition in which they are." Among other cases cited is that of *Hounsell* v. *Smyth* (7 C. B. [N. S.] 731), in which, in denying a recovery, the court said: " No right is alleged; it is merely stated that the owners allowed all persons who chose to do so, for recreation or for business, to go upon the waste without complaint; that they were not churlish enough to interfere with any person who went there. He must take the permission with the concomitant conditions, and it may be perils."

The case at bar lacks even the elements which are so referred to. The plaintiff asserts a right, but has not established it. He does not show that the owners allowed any one to go upon the machine; he simply shows that the inferior servant employed to manage a dump car, did not interfere with those persons who got upon it. In the principal case (*Beck* v. *Carter*, *supra*), a recovery was allowed because, by use long continued, the land where the accident occurred had been made, for the time being, a public place, and part of the highway.

In *Sutton* v. *New York Central, etc., Railroad Company* (66 N. Y. 243), it is held that although a railroad company has by permitting people repeatedly to cross its tracks at a point where there is no public right of passage, given an implied license so to do, it raises no duty to active vigilance to those crossing to guard them from accident; that the licensees under it take the risk of the business. Nothing more can be said in favor of the intestate than that, so far as the machine is concerned, he was upon it by the tacit permission of the defendants' employe; and as between himself and the defendant he was bound to take the equipage as he found it, and the driver or servant with such skill and care as for the time being he exercised. He chose between the machine so equipped and managed, and going in on his own feet. The defendants are in no view to blame either for his choice or for the evil results. On the contrary, the intestate was in the attitude of one consenting to bear a risk as a volunteer, a guest, a

servant or bare licensee, and the princple on which cases relating to those classes are determined apply to him. In *Gillshannon* v. *Railroad Company* (10 Cushing, 228), a laborer on defendant's road while riding on a gravel train, by defendants' consent and for mutual convenience, to his place of labor, was injured by a collision caused by the negligence of the company's servants in charge of the train, and it was held that no action would lie against the company, although both servants were not in a common employment. The court were against a recovery upon two grounds: (1.) The immunity of the master from liability to a servant for injuries caused by the negligence of a co-servant. (2.) Because he was injured while enjoying a privilege merely permitted to him and of which he availed himself to facilitate his own labor. The first ground has no application here, but the plaintiff's intestate is within the last alternative. The defendants' business did not concern him, nor was the machine or manager provided for his use, and it would be great injustice to hold the defendants liable for an injury to one whose presence at the place of danger was unsolicited and for whose safety there was no reason within their knowledge to provide. The case of *Eaton* v. *Delaware, Lackawanna & Western Railroad Company* (57 N. Y. 382), is an authority more in point than those before cited. After an elaborate discussion it is there held that conductors of freight trains cannot create any liability, on the part of their principals, to a person taken by them on such trains, unless the principal in some way assents to it, and that a duty to be careful toward him could only spring up on the part of the principal by an act on the conductor's part, coming within the scope of his authority. It is, therefore, unnecessary to pursue the subject further, and as we are of the opinion that there was no testimony showing either that the defendants permitted the intestate to use the cars as a means of entering the shaft, or of any duty owing by them in that respect, but on the contrary that he voluntarily assumed the risk from which he suffered, we are constrained to hold that the learned trial judge erred in submitting the case to the jury.

The judgment should, therefore, be reversed, and a new trial granted with costs to abide the event, and it is so ordered.

All concur.

Judgment reversed.