FOSTER-HERBERT CUT STONE COMPANY *v.* HATTIE PUGH.

(*Nashville.*   December Term, 1905).

1.   **PERSONAL INJURIES.** Owner of wagon in charge of a
     skillful driver is not liable for injuries to a child thereon at
     driver's invitation, when.

   The owner of a wagon in charge of a skillful driver is not liable
     for the death of a child fatally injured in attempting to alight
     from the wagon after having climbed thereon at the invitation
     of the driver who was neither expressly nor by implication auth-
     orized to invite children to get upon a wagon, and whose act in
     so doing was in no sense within the scope of his employment
     or in the furtherance of his employer's business.

   Cases cited and approved:   Puryear v. Thompson, 5 Hum., 397;
     Cantrell v. Colwell, 3 Head, 472; Diehl v. Ottenville, 14 Lea,
     191; Powers v. Railroad, 153 Mass., 188; Bowler v. O'Connell,
     162 Mass., 319; Driscoll v. Scanlon, 165 Mass., 348; Morris v.
     Brown, 111 N. Y., 318; Cook v. Navigation Co., 76 Tex., 353.

2.   **SAME.** Same.  Stone wagon with bed below axles, in charge
     of a skillful driver, is not so dangerously attractive to children
     as to require extraordinary care by the owner, when.

   A wagon constructed with the bed below the axles, for the pur-
     pose of hauling stone, is not an appliance so dangerous and at-
     tractive to children as to require the owner to exercise greater
     care with reference to the use thereof than putting it in charge
     of a skillful, careful, and prudent driver.  (*Post, pp.* 690, 698-
     700.)

   Cases cited and approved:   Walsh v. Railroad, 145 N. Y., 301; Dan-
     iels v. Railroad, 154 Mass., 349; Frost v. Railroad, 64 N. H.,
     220.)

   Cases cited and distinguished:   Whirley v. Whiteman, 1 Head,
     619; Railroad v. Starnes, 9 Heis., 52; Bates v. Railroad, 90 ,

Stone Co. v. Pugh.

Tenn., 36; Cooper v. Overton, 102 Tenn., 235; Burke v. Ellis, 105 Tenn., 702; Railroad v. Stout, 84 U. S., 657; Lynch v. Nurding, 1 Q. B., 29.

## FROM DAVIDSON.

Appeal from the Circuit Court of Davidson County. —Jno. W. Childers, Judge.

J. M. & Douglass Anderson, for Stone Co.

K. T. M'Connico and W. H. Washington, for Pugh.

Mr. Chief Justice Beard delivered the opinion of the Court.

This action was brought to recover damages for the death of a boy about six years of age, resulting, as is alleged, from the actionable negligence of the plaintiff in error. The facts are that the mother of the deceased was employed in a factory of Nashville, and on the day of the accident had left the boy at and in the care of a charitable institution located near the place of her employment, where a large number of children of tender years were cared for during the day and while their parents were absent from their homes at work. At that time some improvements were being made upon the building occupied by those in charge of the institution,

115 Tenn.—44

and the plaintiff in error contributed the stone needed for that purpose, and sent its wagon under the charge of a careful driver to deliver the stone. The plaintiff in error had knowledge of the character of this institution and that daily a great many small children were assembled at it and cared for by its managers.

The wagon used upon this occasion was one constructed for and adapted to the purpose of receiving and delivering stone, and its only peculiarity was that its bed, instead of being raised above the axles, was below them, and so was nearer the ground than a bed of a farm or any other wagon in general use. At the time this delivery took place many children of various ages and sizes were playing on the premises of the institution. Upon the approach of the wagon a number of these children were attracted to it, and some of them as it entered the premises climbed upon it, but under the direction of the driver at once dismounted.

After the wagon stopped, and while the stones were being unloaded, the children in considerable numbers gathered around and were eager to get upon it, but were forbidden by the driver, who said to them, however, "Wait until I am rid of this load, and then I will give you a ride." Immediately after the work of unloading was finished, several of these children clambered upon the wagon, and the driver started upon his return trip. After riding a short distance they began one after another to dismount, and in undertaking to do likewise the deceased either fell or jumped to the ground between

the wheels, and one of these, passing over his body, so badly injured him that he soon afterwards died.

It is also in evidence, that young Pugh called to the driver once, if not twice, to stop and let him get down, but, either disregarding the call if heard, or else not hearing it, the driver did not stop, so that the boy, while undertaking to leave the wagon still in motion, or falling received the injury complained of.

The declaration contains three counts. The case was rested for the plaintiff, however, upon a fourth count, embraced in an amended declaration, which in substance averred that the defendant sent upon the premises in question a wagon of such nature and description as to be both dangerous and attractive to children, great numbers of whom the defendant knew were left during the day by their parents; that the driver in charge of the wagon was incompetent and unfit; that the defendant failed to provide sufficient servants to deliver the stone, and negligently failed to provide any safeguard or protection while the wagon was being unloaded; and that when it was leaving the premises, its driver having negligently permitted the deceased to mount the wagon, the latter fell therefrom and was fatally injured.

Upon the trial of the issue made by a plea of not guilty, the testimony of the plaintiff disclosed the facts as set out in the beginning of this opinion. At its close the defendant demurred to the evidence, and, its demurrer being overruled, the case went to the jury to ascer-tain the damages sustained, whereupon a verdict was re-

turned in favor of the plaintiff for $2,500. From the judgment thereon the defendant has prosecuted an appeal in the nature of a writ of error.

From a careful examination of this record we are unable to discover any legal ground upon which the verdict and judgment can rest. The case made out is one where a skillful driver is placed in charge of his master's wagon, with direction that he deliver pieces of dressed stone at a place where they are to be used in making some improvement. Having arrived there and unloaded the stone, a number of children, who were gathered about, in answer to his invitation got upon the wagon to enjoy a ride, and while riding away from the premises one of these children, either in falling or undertaking to jump from the wagon, is run over by one of its wheels and is so injured that death soon results. It is not claimed that the driver was either expressly or by implication authorized by his master to extend the invitation to the children to get upon the wagon, or that this act of the servant was in any sense or degree within the scope of his employment or in furtherance of his master's business. Under these facts we think it is well settled the master cannot be called upon to respond in damages for the injury resulting from such unauthorized act. *Puryear* v. *Thompson*, 5 Humph., 397; *Cantrell* v. *Colwell*, 3 Head, 472; *Diehl* v. *Ottenville*, 14 Lea, 191.

These cases lay down the rule which we think controlling here, but many are to be found where the rule has been applied to acts very similar to those presented in

this record. In *Driscoll* v. *Scanlon,* 165 Mass., 348, 43
N. E., 100, 52 Am. St. Rep., 523, the facts were that a
boy of nine accepted the invitation of a driver of a dump
cart, belonging to the defendant, to get upon the cart
and take a ride, during which the boy was injured.

In an action against the master to recover for the in-
jury, in sustaining the ruling of the trial court that on
these facts there could be no recovery, the supreme court
said : "It was not within the scope of the employment
of the driver of the dump cart to invite persons to ride
upon it for their pleasure"—citing *Bowler* v. *O'Connell,*
162 Mass., 319, 38 N. E., 498, 27 L. R. A., 173, 44 Am.
St. Rep., 359 ; *Powers* v. *Boston & M. R. R. Co.,* 153
Mass., 188, 26 N. E., 446. In *Morris* v. *Brown,* 111 N. Y.,
318, 18 N. E., 722, 7 Am. St. Rep., 751, it is said:
"Where a servant is employed to manage a dump cart
hauling stone and other material out of a tunnel, he has
no authority to assent to a third person riding in his car,
and his permitting such person so to ride is not equiva-
lent to an invitation by his master and cannot make him
answerable for acts or omission in the management
of the car from which the person so riding is killed or
suffers substantial injuries." So, in *Cook* v. *Houston,
etc., Navigation Co.,* 76 Tex., 353, 13 S. W., 475, 18 Am.
St. Rep., 52, it was held that where a minor child was
drowned, through having been invited on the tugboat by
the servants of the owner, which act was outside their
authority and against orders, no recovery could be had.
But, as has already been stated, the main reliance of the

defendant in error, in order to maintain the judgment in this case, is in the assumption that the wagon, on account of its peculiar construction, was so dangerously attractive to young children that the duty devolved upon the owner to exercise corresponding diligence to see that no injury resulted to them therefrom, and, failing to do so in the present case, it is liable.

The record disclosed that the defendant in error is engaged in the stone business, and that this wagon was constructed for and was adapted to use in that business. Evidently with a view to this use it was built with a low bed for the easy hoisting of stone into it and of unloading stone from it. Its peculiarity consisted alone in this feature of its construction. It is true, thus built, it was more easily mounted by small children than if its bed had been placed above the axles. But can it be said that this increased facility to children in ascending to the bed made it so dangerous and attractive to children that the owner could not, without the peril of liability for injury to a thoughtless child, received while either mounting to or dismounting from it, send it out in the course of his business with a careful driver, unless he had at the same time one or more reliable guards along to warn such a one away? For it is to be observed that if the contention of the defendant in error that the owner of this wagon is liable for the killing of Pugh, because he sent this dangerous agency to the place in question, though under the charge of a prudent driver, then it would have been equally liable for a like accident oc-

curing in one of the throughfares of Nashville; for on these at all hours of the day it would be conceded that many children are in the habit of passing unattended by persons of sufficient discretion to keep them out of danger.

It is a matter of common observation, which cannot be ignored by the court, that the instinct of a boy impels him to mount, where permitted to do so, and even in the absence of permission, a moving vehicle, whatever its construction or the purpose for which it is used. An ordinary farm wagon, a dump cart, a carriage, or a buggy equally invites him, yet it would hardly be argued that for an injury occurring like the one in question, and under conditions existing in this case on one of these vehicles its owner would be liable. The case of *Whirley* v. *Whiteman*, 1 Head, 619, is no authority for the contention of the counsel for the defendant in error. In that case there was dangerous machinery in operation uninclosed and unguarded, with the knowledge of the owner that small children were in the habit of playing in dangerous proximity to it.

*Lynch* v. *Nurding*, 1 Q. B., 29, referred to with approval in *Whirley's Case*, equally fails to support this contention.

There the facts were that the defendant servant's left the master's horse and cart in a public street unattended while he was visiting in a neighboring house. In the meantime several children engaged in climbing into and out of the cart, and as the plaintiff was get-

ting down from it another boy caused the horse to move, in consequence of which the plaintiff fell and received the injury complained of. Lord Denman, in disposing of the motion for a rule *nisi* made by the defendant for a new trial on the ground of misdirection and that the verdict was against the evidence, said "that upon the facts established the question of negligence was strictly within the province of a jury;" that "they would naturally inquire whether the horse was vicious or steady, and whether the occasion required the servant to be so long absent from his charge, and whether in that case no assistance could be procured to watch the horse, whether the street at that hour was likely to be clear or thronged with a multitude, and especially whether large parties of young children might be reasonably expected to resort to the spot. If this last-mentioned fact were probable, it would be hard to say that a case of gross negligence was not fully established."

Leaving a horse and cart in a public street unattended and loose, subject to natural observation and interference from children passing along the street, might be held a proper question for a jury to say whether it was or was not negligence. But the facts of that case furnish no analogy to those of the present, where the owner has placed his wagon under the direction of a careful driver in the course of his business, and the injury occurs, not in the absence of the driver, but in his presence and as a result of his unauthorized act.

The case of *Burke* v. *Ellis,* 105 Tenn., 702, 58 S. W.,

855, is relied upon with much confidence as sustaining the present judgment.

In that case it seems the receiver of a railroad was held liable for the injury sustained by a child, who was permitted by those in charge of a car loaded with dirt to climb and ride upon it, and who while so doing fell off and was run over. In the court below the trial judge said to the jury "that if the plaintiff was a child of only six or seven years of age, and was allowed by the receiver and employees to get upon and ride on the car loaded with dirt, and while so riding he fell off and was injured by the car running over him, and this was the proximate cause of the injury, the receiver would be liable." To the criticism made upon this charge it was said by this court, speaking through Wilkes, J., that there was no error in it; the court adding: "It is negligence *per se* to permit a child of such tender years to climb on and ride upon a car loaded with loose earth that is liable to slip and throw the child off at any time . . . An open car loaded with earth is such an inducement as would naturally lead children into danger, and it was negligence not to keep them away from the cars under such circumstances. There is proof tending to show that the child was not only permitted, but invited to ride by the railroad employees and with the knowledge of the superintendent."

The authority of this case must be confined within the narrow limits of its own facts and will not be extended to support a judgment resting on facts like those

presented in this record. In *Nashville & Chattanooga R. R.* v. *Starnes,* 56 Tenn., 52, 24 Am. Rep., 296, while recognizing the established doctrine of the common law that the master is not liable for the torts of his servant, committed not in the line of the master's service, or with his consent or ratification, yet it was held that a party injured as the result of the wanton blowing by an engineer of his whistle could recover against the railroad company because of the absolute necessity for more stringent care in the protection of life and property against the perils of the steam engine with its capacity for mischief.

In addition, the *Burke Case* shows that the invitation was extended to the child, whose injuries were there in question, by the railroad employees with the knowledge of the superintendent, who evidently was a superior officer of the company and might well be held *pro hac vice* to be the corporation itself.

The doctrine of an attractive nuisance—and this after all is at the bottom of the contention—while by no means having its beginning, at least found material support, in the case of *Sioux City, etc., R. R. Co.* v. *Stout,* 84 U. S., 657, 21 L. Ed., 745. This was the first of what are called "the turntable cases." While this case has been followed by the supreme court of the United States in a number of subsequent cases, and by the courts of last resort of several of the states, yet its authority has been partially or absolutely repudiated in others. Among the cases of the latter class are *Walsh* v. *Fitch-*

*burg R. R. Co.,* 145 N. Y., 301, 39 N. E., 1068, 27 L. R. A., 724, 45 Am. St. Rep., 615; *Daniels* v. *N. Y. & C. R. Co.,* 154 Mass., 349, 28 N. E., 283, 13 L. R. A., 248, 26 Am. St. Rep., 253; *Frost* v. *E. R. R. Co.,* 64 N. H., 220, 9 Atl., 790, 10 Am. St. Rep., 396.

While the case of *Walsh* v. *Fitchburg R. R. Co.,* supra, and those following it, are not mentioned in *Bates* v. *Railway Co.,* 90 Tenn., 36, 15 S. W., 1069, 25 Am. St. Rep., 665, yet the effect of the holding of this court in this latter case was to impose very much of a limitation upon the rule announced in the former. That was a case where a boy of nine was injured upon the turntable belonging to the defendant railroad company. His companions took out the bolt used to keep the turntable at rest and set it in motion, when the plaintiff, undertaking to mount it, was injured. There were two trials of the case; the first resulting in a verdict and judgment against the railroad company. There was a reversal in this court upon the ground that the circuit judge failed to charge as a matter of law, first, "that the defendant was not required to fasten or secure the turntable so that the injured boy could not displace such fastening and put the table in motion; second, that the defendant was not required to fasten the turntable any more securely than necessary to keep it securely in place." Upon the second trial, while following the direction of this court and giving in charge to the jury the special requests, for the refusal of which the reversal had been had, yet the trial judge by other para-

graphs in his charge so neutralized their effect that the case was again reversed. In *Cooper* v. *Overton,* 102 Tenn., 235, 52 S. W., 183, 45 L. R. A., 591, 73 Am. St. Rep., 864, it is said that the rule of the turntable cases was not applicable to a case involving such facts as were disclosed by the case then in hand, and that "it should not be carried beyond the class of cases to which it has been applied."

We think to apply it under such circumstances as are disclosed in this record would be in the face of sound principle and of all well-considered authority. The judgment of the lower court is therefore reversed, and the case is dismissed.