# BAUDILIO CORREA

*v.*

# AMERICAN RAILROAD COMPANY OF PORTO RICO.

San Juan, Law, No. 623.

1. Where, on a motion for a new trial, it appears that the court let a case to the jury on the theory that the facts made defendant liable, and the court ascertains that it erred as to the law in that regard, a new trial will be granted, and counsel for plaintiff required to file an affidavit showing that on the new trial the evidence will be such as to warrant recovery, or else the suit will stand dismissed.

2. An employer or master is not liable for the acts of his servant that are not done with his knowledge, express or implied, and that are entirely without the scope of the servant's duty.

NOTE.—*Master and Servant; Liability.*—Master's liability for injury to child invited into place of danger by employee, see note to Foster-Herbert Cut Stone Co. v. Pugh, 4 L.R.A.(N.S.) 804, which is referred to in the above opinion.

As to liability for acts of servant held not to be within scope of employment, see note to Bowler v. O'Connell, 27 L.R.A. 177, also referred to in above opinion.

Correa v. American R. Co.

3. A railroad company is not liable for the careless act of its servants in throwing sugar cane from its cars to children standing in a safe place beside the railroad track as a train passes, and in consequence of which one of the children, in scrambling for the cane, is injured.

4. A child eight years of age, who leaves a safe place beside a railroad track as a train passes and rushes towards the train and takes hold of a stick of sugar cane protruding from the side of the car and is pulled down under the wheels and injured, cannot recover from the railroad company for the injury.

Opinion filed February 12, 1910.

*Mr. Joseph Anderson, Jr.,* attorney for the plaintiff.

*Mr. Francis H. Dexter,* attorney for the defendant.

Rodey, Judge, delivered the following opinion:

This cause is before us on a motion for a new trial. It is an action for personal injury to a boy. It was tried before the court and a jury November 29th and 30th, 1909, and a verdict returned for plaintiff in the sum of $2,500. Defendant complains that there was insufficient evidence to justify the verdict, and that, anyway, it is against the law. Complaint is also made as to the court's instructions regarding the law given to the jury at the trial.

At and during the trial our attention was not called to the unsettled condition of the law on facts, such as were developed in the case, and so we let the case go to the jury, instructing them fairly, as we think, under the view we then took of the law, but now, after an examination made, we find that it is a question upon which there appears to exist great conflict of decision in

the higher courts of the different states of the Union, and which has induced many of them to refuse to follow rulings of the Supreme Court of the United States and other courts which were urged as being in point. We can best bring to the minds of members of the bar the holdings referred to by stating that it is the rule laid down in what have become known as the turntable and cognate cases, which began with Sioux City & P. R. Co. v. Stout, 17 Wall. 657, 21 L. ed. 745.

The facts here were about as follows: The accident took place on the defendant's railroad about one o'clock P. M. on April 14, 1908, in the little town of Hatillo, on the northwest coast of the island of Porto Rico. At the time of the accident the boy was about, or perhaps slightly over eight years of age. His mother is a widow, with several children besides plaintiff. She works in a tobacco factory in that town. This boy was attending school at a schoolhouse that was situated on the side of the road that crosses the railroad at right angles, the schoolhouse standing off about 80 meters or so from the track. On the day in question the mother went to her work after dinner, as usual, and let the boy go to school. In company with other boys, the plaintiff went to the railroad about the time the afternoon cane train was expected to pass by. Such trains had been passing the schoolhouse and playground of the children at about that hour for several months, and it was in evidence that the children had been accustomed to go there to pick up sugar cane that dropped from the cars, or that was thrown off by the train men to the children and others as the train went by. Several witnesses testified to this custom of throwing off sugar cane. On the day in question five or six boys, including the plaintiff, crossed the track and went a few feet up the road on the

other side of it where there was a slight rise in the road. The evidence is conflicting from this point on. The little boy plaintiff states that the men on the train threw off some sticks of sugar cane, and that he and another boy stooped down to get them close to the train, but it appears from his evidence that he either bumped into the other boy or the latter struck him with a stick of the cane on the belly, as he put it, and he fell under the train in such position that one of his legs was cut off. The remaining five boys testified positively that the accident did not occur in this way at all, but that plaintiff, as the train was approaching, took a few steps in its direction as though to meet it, and then as no cane was thrown off to the boys, plaintiff saw a stick of cane protruding from the wooden grate or side posts of one of the cars and took hold of it, but that the train was going so fast it pulled him along and dragged him down, throwing him in such position as that he fell and was injured as stated. It is unquestioned from the evidence, and from the position of the blood and the leg after the accident, that the boy was run over in about the middle of the main road on the public crossing. There was evidence in the case that there was a woman, who lived a short distance from this crossing, who was accustomed to put up chains across the railroad on each side of the track when trains passed, but that she was not there when this train came along, but arrived a few moments after the accident. There was considerable evidence about failure to blow the whistle or ring the engine bell, but we do not think such failure, or that of the putting up of chains cuts much figure as to the liability of defendant on the whole case as made by the evidence.

The grave question is whether in this sort of a case plaintiff

Correa v. American R. Co.

ought to be permitted to recover at all. It cannot be contended that the employees on this train had any right to throw off any of the cane to anybody, or that such action was at all within the scope of their employment, or their duty as train men. In fact, to do so was a species of larceny of the property, small though it was. Of course, it cannot be contended that the boys were trespassers in any sense, because they were on a public road, and were not even on the track as the train approached, or as it went by. If the train hands saw them at all they saw them in a safe place, standing on the slight rise of ground in the road across the track from the schoolhouse as the train went by. Therefore, there is no room for argument on the question that defendant is not liable at all, if the occurrence took place as testified to by the other five little boys, all of whom were small for their ages, and ranged at the time of the accident from nine to thirteen years, because, although this little boy was only about eight years of age, still he was old enough to have understood the danger involved in attempting to go near the train, and if he rashly left a safe position when the train was going by at even a moderate speed, and took hold of a stick of cane as testified to, surely the defendant could not be held liable therefor, even though the child was of such tender years. The authorities all appear to sustain this position, and the fact that he may have been induced to go there by the throwing off of cane by the help on the train on previous days would not, it is submitted, make the defendant liable. See Keating v. Michigan C. R. Co. 97 Mich. 154, 37 Am. St. Rep. 328, 56 N. W. 346.

If the accident occurred in the other way, by the men actually throwing the sticks of cane from the cars to the ground so close to the track as to make it dangerous for the children to scramble

for it so near the wheels of this dangerous machinery, then the question arises whether the defendant, in the absence of knowledge of· it, would be liable because of this unauthorized act of its servants in thus enticing the children into this dangerous position, and throwing the cane to them. These train men were in no sense superintendents or *alter egos* of defendant, whose unauthorized acts outside of the scope of their duties could bind it. See Formall v. Standard Oil Co. 127 Mich. 496, 86 N. W. 946, 4 L.R.A. (N.S.) 805 note.

The conflict of authority on cases that develop facts more or less similar to the one we are here discussing is so bewildering that we will not try to collate or discuss them at any length. We might state the two extremes of the views exhibited by the courts to be best shown, on the one hand, by the case of Stephenson v. Southern P. Co. 93 Cal. 558, 15 L.R.A. 475, 27 Am. St. Rep. 223, 29 Pac. 234, where the court went so far as to hold the defendant not liable for the act of one of its locomotive engineers, who moved his switch engine towards a street car crossing the track, simply to frighten the passengers, and caused injury to the plaintiff who jumped off in fear of a collision that appearances showed to be imminent. One would naturally think that the defendant ought to be held liable in that sort of a case. Also in the case of Finley v. Hudson Electric R. Co. 64 Hun, 373, 19 N. Y. Supp. 621, an eight-year-old boy was injured while getting on a moving car by invitation of the motorman, in payment for the boy's services in opening a switch, and it was held that it was not a part of the motorman's duty, or within the scope of his employment to invite the boy for that consideration in that way on the car, and the judgment for the plaintiff was not permitted to stand. Yet, on the other

hand, in the case of Ashworth v. Southern R. Co. 116 Ga. 635, 59 L.R.A. 592, 43 S. E. 36, a railroad company was held liable for injury to a child who got on the running board behind the tank of a switch engine, without the knowledge of the man in charge, just because the track at that place went through a children's playground, where children had been accustomed to getting on and riding in that manner to the end of the spur and back to the playground.

A case in which the facts approach those in the case at bar is that of Foster-Herbert Cut Stone Co. v. Pugh, 115 Tenn. 688, 112 Am. St. Rep. 881, 91 S. W. 199, which is reported in 4 L.R.A.(N.S.) 804. It is extensively annotated. The notes collate many of the principal cases where the facts are more or less like those in the case at bar, and a reading of them is instructive. In the Pugh Case, the mother of a six-year-old boy was, as in this case, working in a factory and she, in company with other mothers, left their children at a sort of nursery in the vicinity of the factory where they worked while performing their duties. Some improvements were being made on the building at this nursery for which the defendant was furnishing the stone, and for that purpose had sent one of its big wagons there in charge of a careful driver with a load of stone. The children surrounded the wagon, which was one with the platform set below the axles, and were attempting to ride on it, but the man in charge drove them off, and said to them that as soon as he was rid of the load he would give them a ride. They waited around until the stone was all unloaded, and then several of them got on this low platform of the big wagon and proceeded to ride away with the driver. After going some distance, the children jumped off one by one, and the evidence

Correa v. American R. Co.

showed that the boy in question asked twice for the man to stop
and let him off, but the driver either did not hear him or paid
no attention to him, and in jumping off the child fell and was
so severely injured by the wheels running over him that he died
within a short time.    The court cites and distinguishes a large .
number of well-known cognate cases, in its argument, that hold
defendants liable, but the main grounds of its own judgment in
the case before it were that the wagon did not come within the
definition of what seems to have been the foundation for the
turntable cases; that is, that it was not an attractive nuisance
or an attractive, dangerous piece of machinery, liable to draw
children to it; and further, because the act of the driver in invit-
ing the children to take the ride with him was not within the
scope of his employment, and his employer had no knowledge
of his act, and it could not be presumed that it authorized it.
A reading of this case will be instructive to any one.

· Now, unless it can be said that it was negligence for defendant
here to have men in charge of its trains who did not know any
better than to throw cane to children along its line, we cannot
see how it can be held liable any more than it could be held liable
if a stranger, not connected with the railroad at all, was standing
with the children on the road and had thrown an orange, a toy,
or any other object attractive to children toward the train, and
one of these boys had been injured while scrambling for it; yet
surely this defendant, under the facts shown, owed no such
duty to these children as would render it liable for failing to
employ men who had better sense in that particular regard.
Of course, no one will question the proposition that these train
men may be liable to the injured boy, but the fact that they are
not responsible financially is surely no reason why their em-

Correa v. American R. Co.

ployer should answer for them. Such a doctrine would be dangerous, indeed. This is not like a case where those in charge of a train see infants actually on the track, or in an imminently dangerous position, and do not exercise proper care in managing the engine or cars to avoid injuring them. There would be no question at all of the defendant's liability in that sort of a case. But in this case, as stated, the children were in a safe place when the train went by, and it was only by leaving that safe place, either on the temptation offered by the senseless act of the train men (if they, in fact, threw cane to them), or as a result of his own rash act in going towards the moving train and grabbing the stick of cane, that the poor little boy was injured.

The books are filled with cases settling the rule that a master is not liable for voluntary, or even wanton or wilful acts of employees that are not done in the course of the employment, or within the scope of the duty of the employee to the master, but against his orders, express or implied. No evidence was offered that this defendant, through any superior officer that could bind it, had any knowledge of this custom of the train men in throwing off cane to persons along the line, if it, in fact, was a custom, and it is not to be supposed that it would have sanctioned or permitted it, as the cane belonged to the shippers who sent it over the road.

In the case of Bowler v. O'Connell, 162 Mass. 319, 27 L.R.A. 173, 44 Am. St. Rep. 359, 38 N. E. 498, the supreme court of Massachusetts held that the scope of employment of a servant leading a colt from a watering tub to a yard near by did not extend to an invitation to ride, given by him to a boy, who was injured in attempting to accept it, and the master, therefore, was not responsible for the injury.

In a note to the Bowler-O'Connell Case, 27 L.R.A. 177, supra, a large number of cases are cited showing acts that are held not to be within the scope of the employment of the servant, and among them is one where "A street car company is not liable for the act of its driver in striking with his whip at a boy, which results in the boy's becoming entangled in the whip and thrown under the car," citing Ryan v. Hudson River R. Co. 1 Jones & S. 39.

This appears to us to be good common sense as well as sound doctrine, and therefore we cannot see, on the facts here, how defendant was or is in any sense liable, and, therefore, we are constrained to admit that we erred in letting the case go to the jury at all. At any rate, the evidence as it stood was overwhelmingly in favor of defendant. Nobody saw the actual occurrence but the boys themselves, and five of them testified before a justice of the peace within a few hours after the accident in the same manner in which they testified on the stand. Evidence of this was offered but we excluded it, as the boys themselves were present in court testifying. It is, therefore, our opinion that even on the evidence the plaintiff ought not to have recovered, but, as stated, we do not think in law that any liability exists at all.

Personally, as was no doubt the case with the jury, our sympathies go out to the poor little boy who lost his leg, and who has to hobble through life without his limb, but we are not here to either give judgments or permit verdict against defendants who are not liable in law, however unfortunate an accident may be, or however deep our sympathy for the poor victim is.

Therefore the motion for a new trial will be granted, but unless within five days counsel for plaintiff shall file an affidavit

that he has good reason to believe, and does believe that on the new trial the proofs will be so different from the proofs on the former trial as to warrant recovery, even under the views herein expressed, the cause will stand dismissed without costs to defendant, without further action by the court.