REYNOLDS *v.* KNOWLES.

(*Knoxville*, September Term, 1947.)

Opinion filed November 29, 1947.

WILLIAMS & WILLIAMS, of Chattanooga, for plaintiff in error.

BERKE & FLEMING and T. O. JEWELL, both of Chattanooga, for defendant in error.

MR. JUSTICE PREWITT delivered the opinion of the Court.

The plaintiff is a seven year old boy and was injured while riding as the guest of Lucius Wilson, driver of a truck owned by Reynolds. It is conceded that this young boy was a trespasser because Reynolds had given Wilson, his driver, positive instructions not to pick up and haul children. There was a judgment in the trial court for $1,000, which was reduced to $800 by the trial judge. The Court of Appeals affirmed the judgment of the lower court in a two-to-one decision. *Certiorari* has been granted and the case fully argued at the bar of this Court.

On the day of the accident Wilson had made some deliveries of coal in the city of Chattanooga. On one of his return trips he had picked up the plaintiff and rode him to near the coalyard where he was put out of the truck so that Reynolds could not see him riding because ''it would make the boss mad.'' Wilson then drove into the coalyard and loaded his truck. After getting a short distance from the coalyard Wilson picked up the plaintiff and his brother. As they were riding down the street Wilson asked the older Knowles boy, who was about ten years old, if he did not want to sit in his lap and drive. While the boy was in the process of getting into Wilson's lap the truck left the street and crashed into a telephone pole causing the injuries here complained of.

The trial judge submitted the question of wanton negligence to the jury; i. e., whether Reynolds, the owner of

the truck, had made sufficient preliminary investigation before he put Wilson in charge of it. So, then, the question presented is whether the trial judge should have granted the motion for a directed verdict in this case.

The record shows that Reynolds owned and operated a coalyard in Chattanooga, and that he had five trucks for the purpose of delivering coal to his customers. These trucks were operated by employees of Reynolds. Among these employees was Lucius Wilson, an uncle of the injured plaintiff. Wilson started to work for Reynolds two or three days before the accident. He was employed to work in the coalyard, load coal, etc. Wilson told Reynolds when he approached him about employment that he had worked for two or three very reputable concerns in Chattanooga, and said that he had driven trucks for them. He was permitted to operate the trucks in and around the coalyard, and when it was seen that he could drive, he was sent out in the city to deliver coal. Wilson had no driver's license. However, he had told Reynolds that he had left his license at home.

It appears that at the time of the accident the truck was going about 35 miles per hour. The brakes on the truck had failed to hold at a street intersection while on this trip. The truck was periodically inspected and had passed the safety lane test. It does not appear that Reynolds had any knowledge of the brakes being defective. Wilson, the truck driver, was an illiterate young man of eighteen or nineteen years. He had been discharged from the Army on account of illiteracy. The father of the Knowles boy in a conversation with Reynolds told him of Wilson's illiteracy and that he could not drive and asked why he hired him. Reynolds replied, "This is just war time and it is hard to get help." This conversation took place after the accident. Apparently Wilson could

do manual labor, such as house painting, loading coal, etc., and according to Reynolds and another employee of his, he could drive a truck. He made several deliveries of coal in the city on the day of the accident and had driven successfully around the coalyard.

In *Home Stores, Inc.,* v. *Parker,* 179 Tenn. 372, 377, 378, 379, 166 S. W. (2d) 619, 621, this Court quoted with approval from the opinion of the Court of Appeals as follows:

" 'The uncontroverted evidence is that the plaintiff was the guest of the driver of the truck and that the driver had no authority or permission to permit riders on the truck. He was therefore a trespasser as to the defendant Homes Stores, Inc., and it was liable to him only for injuries caused by the wanton, willful, or reckless negligence of the truck driver. 5 Blashfield (Cyclopedia of Automobile Law and Pactice), Perm. Ed., Secs 3016 and 3017, and cases cited, Anderson, An Automobile Accident Suit, 651, Sec. 560; Vartanian, The Law of Automobiles in Tennessee, p. 412, Sec. 121; *Liggett & Myers Tobacco Co.* v. *DeParcq* (8 *Cir.*), 66 F. (2d) 678; *Lipscomb* v. *News Star World Pub. Corp.* (*La. App.*), 5 So. (2d) 41; *Stone Co.* v. *Pugh,* 115 Tenn. 688, 692, 91 S. W. 199 (4 L. R. A., N. S., 804, 112 Am. St. Rep. 881).

\* \* \* \*

" ' "A master is not liable for injuries sustained by one invited to ride on a vehicle by his servant, without actual or ostensible authority to do so, and where not acting within the scope of his duties. Though the car is driven by the owner's agent or servant duly authorized, the rider may be the guest of the agent or servant, and not of the owner; and, if the driver, though acting duly for his master in the operation of the car, was not acting for him in accepting and transporting the guest,

the master cannot be held liable. Hence, the fact that the driver of the car, though operating it as the servant of the owner, invites a passenger to become his (the driver's) guest, does not as to such guest make the driver the servant of the owner in respect to the safe transportation of the guest. A person so riding has been held to be a trespasser as to the owner who, short of wantonness, will not be held liable for injuries occasioned by the driver." ' Vartanion on the Law of Automobiles in Tennessee, p. 412, Sec. 121.

" 'In the case of *Stone Co.* v. *Pugh,* 115 Tenn. 688, 91 S. W. 199 (4 L. R. A., N. S., 804, 112 Am. St. Rep. 881) it was held that the owner of a wagon was not liable for the death of a child fatally injured in attempting to alight from the wagon after having climbed thereon at the invitation of the driver who was neither expressly nor by implication authorized to invite children to get upon a wagon, and whose act in so doing was in no sense within the scope of his employment or in the furtherance of his employer's business.

" ' "The question as to whether the servant's or the employee's act may reasonably be held within the scope of his employment is ordinarily one of fact for the determination of the jury, except where the departure from the master's business is of marked and decided character. But where the evidence that the chauffeur was not acting within the course of his employment is not improbable, unreasonable or suspicious, and is not contradicted by the facts, circumstances or presumptions, it is held that there is no question of fact for the jury." ' ' Vartanian on The Law of Automobiles in Tennessee, 415, Sec. 121."

It appearing that the little boy was a trespasser and that Wilson had positive instruction not to ride children in the truck, the question presented is whether

it was wanton, willful, or reckless negligence for Reynolds to permit Wilson to operate the truck.

"The actor's conduct is in reckless disregard of the safety of another if he intentionally does an act or fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him." Restatement of.the Law, Torts, Sec. 500, p. 1293.

We are of opinion that at most the acts complained of are mere negligence.

Complaint is made of the failure of Reynolds to have adequate brakes on the truck.

" . . . So too, if his failure to stop is due to the fact that his brakes fail to act, he may be negligent if the bad condition of the brakes could have been discovered by such an inspection as it is his duty to make, but his conduct is not reckless." Restatement of the Law, Torts, Sec. 500, p. 1294.

In 38 Am. Jur., Negligence, Sec. 178, p. 855, it is said:

" . . . A defendant's act is properly characterized as wilful, wanton, or reckless, within the meaning of the foregoing rule, only when it was apparent, or reasonably should have been apparent, to the defendant that the result was likely to prove disastrous to the plaintiff, and he acted with such an indifference toward, or utter disregard of, such a consequence that it can be said he was willing to perpetrate it."

We do not think from any reasonable deduction of the facts as they appeared to Reynolds that it could be said that the injuries here complained of were likely to result, or that he acted with such an indifference toward, or

utter disregard of, the welfare or safety of others. Perhaps, it might be said that Reynolds was guilty of some negligence, but under the authority of *Home Stores, Inc.,* v. *Parker, supra,* the plaintiff was a trespasser, the driver of the truck having been instructed not to let children ride. It was said in that case that the owner of the truck would be liable only in case of some wanton or willful act on the part of the driver. Now, in the instant case, it appears that the injuries did not result from some wanton or willful act of the operator of the truck and did not result from the heedless or reckless conduct of the owner in the employment of the driver. The injuries followed positive disobedience of instruction given to the driver.

In 20 R. C. L., Sec. 15, pp. 20, 21, it is said: ''Willful, wanton, malicious or intentional conduct is not properly speaking within the meaning of the term 'negligence.' Wilfulness or wantonness imports premeditation or knowledge and consciousness that injury will result from the act done, whereas 'negligence' conveys the idea of inadvertence as distinguished from premeditation or formed intention. Yet in the opinions one not infrequently finds the expression 'wilful negligence;' and it is explained that 'to constitute wilful negligence, the act done or omitted to be done must be intended,' or must involve 'such reckless disregard of security and right as to imply bad faith.' But ill will is not a necessary element of this wilful or wanton negligence. Occasionally the courts have essayed to distinguish between wilful injury and 'wanton' negligence. The proposition has been formulated as follows: To constitute wilful injury there must be design, purpose, and intent to do wrong and inflict the injury; while to constitute wanton negligence, the party doing the act or failing to act must be conscious of his conduct, and,

though having no intent to injure, must be conscious from his knowledge of surrounding circumstances and existing conditions, that his conduct will naturally or probably result in injury."

The general rule, supported by numerous cases, is thus stated in 39 C. J. Sec. 1459, p. 1272; "Where there is neither express nor implied authority given a servant to employ another to perform or to assist him in the performance of his work, or a subsequent ratification by his employer of such employment, the relation of master and servant between the employer and one so employed by his servant does not exist and he is not liable for the negligent acts of the latter under the doctrine of *respondeat superior.*"

In *Haluptzok* v. *Great Northern Ry. Co.,* 55 Minn. 446, 57 N. W. 144, 145, 26 L. R. A. 739, the Supreme Court of Minnesota said: "Under the doctrine of *respondeat superior,* a master, however careful in the selection of his servants, is responsible to strangers for their negligence committed in the course of their employment. The doctrine is at best somewhat severe, and, if a man is to be held liable for the acts of his servants, he certainly should have the exclusive right to determine who they shall be. Hence, we think, in every well-considered case where a person has been held liable, under the doctrine referred to, for the negligence of another, that other was engaged in his service either by the defendant personally, or by others by his authority, express or implied."

We have heretofore indicated that the act of Reynolds in employing Wilson was not to be considered as likely to produce some harm or injury to another; that in permitting the plaintiff to ride in the truck was beyond the scope of the authority of Wilson and in positive defiance of instructions; and that when Wilson permitted

the plaintiff and his older brother to ride in the truck and later let the older brother get in his lap to drive, this was the act of Wilson and not of Reynolds. For the foregoing reasons, we are of opinion that the motion for a directed verdict should have been sustained and plaintiff's suit dismissed.

The judgment of the Court of Appeals is reversed and the suit dismissed.

NELI, C. J., and GAILOR & TOMLINSON, JJ., concur.

BURNETT, J., not participating.